NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

STEVEN N. SCULLY,

        *Plaintiff,*

    v.

CITY OF JERSEY CITY POLICE
DEPARTMENT, *et al,*

        *Defendants.*

Civil Action No. 15-6100

**OPINION**

---

**John Michael Vazquez, U.S.D.J.**

    This matter comes before the Court on the motion for summary judgment filed by

Defendants City of Jersey City ("Jersey City"), City of Jersey City Police Department ("JCPD"),

Officer J.K. Boamah, and Officer J. Mitchell.  D.E. 34.[1]  *Pro se* Plaintiff Steven N. Scully filed

two letters on February 9, 2018 (D.E. 35) and April 24, 2018 (D.E. 40), which the Court will treat

as Plaintiff's opposition to the motion.[2]  The Court reviewed all submissions made in support of

the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and

---

[1] The brief in support of Defendants' motion for summary judgment (D.E. 34-2) is referred to as
"Defs' Br."

[2] Plaintiff also filed a "Petition for a Stay of the Proceedings" requesting more time to respond to
Defendants' motion for summary judgment on September 7, 2018.  D.E. 43.  Plaintiff's opposition
to the motion for summary judgment should have been filed by March 5, 2018.  Accordingly, his
request for more time was six months late, and prior to this request, Plaintiff failed to give the
Court any indication that he intended to formally respond to the motion.  As a result, although
Plaintiff is proceeding *pro se*, the Court denies Plaintiff's request because it was extremely
untimely.  The Court also notes that although Plaintiff did not file a responsive statement of
material facts pursuant to L. Civ. R. 56.1, the Court is not required to construe Rule 56.1 narrowly,
especially when the party is proceeding *pro se*.  *Niblack v. Murray*, No. 12-6910, 2016 WL
4086775, at *1 n.1 (D.N.J. July 29, 2016).

L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motion is **GRANTED in part and DENIED in part**.

## I.     FACTS AND PROCEDURAL HISTORY

### A. Factual Background[3]

On the evening of May 18, 2013, Plaintiff drove his car to the Truck Stop Diner in Kearny, New Jersey. Defendants Statement of Undisputed Material Facts ("DSOMF") ¶ 4, D.E. 34-1. At the time, Plaintiff drove a black 1991 GMC Suburban with a Maine license plate. *Id.* ¶ 6; Robinson Cert. Ex. C, Dep. of Steven N. Scully (hereinafter "Scully Dep.") at T79:1-7 (July 28, 2017). After drinking one beer, Plaintiff left the diner and drove to Jersey City, where he picked up a prostitute. *Id.* ¶ 6; Scully Dep. at T57:2-5. Right after the prostitute got into Plaintiff's car, Plaintiff rear-ended a white Honda that was stopped in front of him. The driver of the white Honda got out of the car and then used his phone. Plaintiff remained in his car and started to reach for his vehicle registration and insurance information in the glove box. As Plaintiff was reaching for these documents, a police cruiser pulled up beside his car. *Id.* ¶¶ 7-8; Scully Dep. at T75:10-24.

Defendants Boamah and Mitchell, Jersey City police officers, were on patrol. Boamah was driving the police cruiser that approached the accident, and his partner, Mitchell was in the passenger seat. DSOMF ¶¶ 9-10. Boamah and Mitchell were flagged down by motorist who claimed that she had just been struck by a black GMC with a Maine license plate. *Id.* ¶ 9. When the police cruiser pulled up, Plaintiff "took off" in his car. Scully Dep. at T77:4-15. Boamah and Mitchell followed in the police cruiser. Boamah activated the lights and sirens in the police cruiser. DSMOF ¶ 11; Scully Dep. at T95:16-96:9. Plaintiff failed to stop for the police cruiser and drove

---

[3] The factual background is taken from Defendants' Statement of Undisputed Material Facts ("DSOMF"), the Certification of Chaunelle Robinson in Support of Defendants' Motion for Summary Judgment ("Robinson Cert"), D.E. 34-5, and Plaintiff's February 9 and April 24 letters.

erratically; he drove through a stop sign and went the wrong way on a one-way street. Robinson Cert. Ex. G, Police Report; Scully Dep. at T96:2-9, T105:10-15; DSOMF ¶ 11. Eventually, Boamah overtook Plaintiff's car as the vehicles approached a busy intersection. Boamah "slammed on [his] breaks," causing Plaintiff's vehicle to rear-end the police cruiser. Scully Dep. at T96:2-97:8; DSOMF ¶ 12.

After this point, the parties' recollections of the incident are materially different. Defendants maintain that after Plaintiff rear-ended the police cruiser, Boamah and Mitchell got out of the car and approached Plaintiff's vehicle with their weapons drawn. Boamah approached the driver-side, and Mitchell approached the passenger-side, where the prostitute was seated. DSOMF ¶ 13; Robinson Cert. Ex. D, Certification of John Boamah ("Boamah Cert.") ¶ 9; Robinson Cert. Ex. E, Certification of James Mitchell ("Mitchell Cert.") ¶ 9. While approaching Plaintiff's car, Boamah and Mitchell commanded Plaintiff and his passenger show their hands and exit the vehicle. Boamah Cert. ¶ 8; Mitchell Cert. ¶ 9. Scully's passenger exited the car without incident and Mitchell put her in handcuffs. Mitchell Cert. ¶ 10. Plaintiff, however, remained in the car. Boamah Cert. ¶ 8. Boamah "saw Plaintiff initially raise his hands to chest height" but then Plaintiff bent over and reached down. DSOMF ¶ 14; Boamah Cert. ¶ 9. Believing that Plaintiff may have been reaching for a weapon, Boamah broke the driver's side window with his hand, grabbed Plaintiff's hand, wrapped his arm around Plaintiff's body and began pulling Plaintiff out of the car. DSMOF ¶ 15. "Six other officers immediately arrived and assisted [Boamah] in removing the driver from the vehicle" and with placing Plaintiff in handcuffs. Boamah Cert. ¶ 10; *see also* Mitchell Cert. ¶ 12. Plaintiff was unarmed. Scully Dep. at T101:13-18.

Plaintiff was handcuffed and sitting up next to his car when Mitchell first approached Plaintiff. Mitchell smelled alcohol on Plaintiff's breath, while noticing that Plaintiff's eyes were

bloodshot and that his speech was slurred. Mitchell Cert. ¶¶ 12-13. Mitchell walked Plaintiff to an ambulance that took him to Jersey City Medical Center because he had "minor lacerations to the face" from the shattered car window. *Id.* ¶ 13; Police Report. Boamah was also brought to the Jersey City Medical Center via ambulance for medical care because he received numerous lacerations to his hand and arm from the incident. *See* Police Report. Neither Boamah nor Mitchell saw anyone punch, kick, or otherwise assault Plaintiff. Boamah Cert. ¶ 12, Mitchell Cert. ¶ 14.

Plaintiff's account of the incident is starkly different. Plaintiff contends that Boamah exited the police cruiser and approached Plaintiff's car with his weapon drawn while remaining silent. Boamah then smashed Plaintiff's driver-side car window. Boamah yanked Plaintiff out of his car, threw Plaintiff forcefully onto the pavement, and slammed Plaintiff to the ground. Everything happened quickly, so Plaintiff is not sure if Boamah used his fist, gun, or another instrument to break the window. Plaintiff also does not recall if Boamah opened the car door or if he was pulled out of the vehicle through the window. Scully Dep. at T108:24-109:4, T110:10-19. Further, Plaintiff did not hear either officer ask Plaintiff or his passenger to get out of the car. *Id.* at T97:10-98:15, T104:12-14.

As Plaintiff was lying face-down on the ground, Boamah repeatedly punched Plaintiff in the face while yelling obscenities. Scully Dep. at T97:10-98:15, T104:12-14, T113:2-6. Boamah hit Plaintiff's face approximately ten to twelve times. *Id.* at T115:1-6. At his deposition, Plaintiff stated that Boamah was a "regular white guy." *Id.* at T103:13-25. Officer Boamah, however, "is a dark-skinned African American male." DSOMF ¶ 21. Plaintiff now states that his statement about Boamah's race at the deposition was a mistake. Plaintiff made this mistake because he never really got a good look at Boamah because the events progressed quickly and it was dark out. Plf's Feb. 9, 2018 Letter.

While Boamah was punching Plaintiff in the face, Mitchell hit or kicked Plaintiff's right ribcage approximately three to four times. *Id.* at T103:23-103:2, T115:18-117:18. Plaintiff could not see Mitchell while this occurred but after Boamah stopped punching Plaintiff, Officer Mitchell placed handcuffs on Plaintiff. As Plaintiff was being handcuffed, he looked up and saw Mitchell. *Id.* at T118:1-119:7. After Plaintiff was handcuffed, other JCPD officers arrived on the scene. Plf's Feb. 9, 2018 Letter; Plf's Apr. 24, 2018 Letter. As a result of the officers' use of force, Plaintiff suffered from nerve damage that caused his eyelids to droop, had teeth extracted, and had surgery on his eye. Scully Dep. T51:8-52:18, 114:14-20.

Plaintiff was arrested and charged with (1) eluding a law enforcement officer (N.J.S.A. 2C:29-2(b)); (2) attempting to cause bodily harm to a police officer (N.J.S.A. 2C:12-1(b)(5)(a)); (3) driving under the influence (N.J.S.A. 39:4-50); (4) failing to stop (N.J.S.A. 39:4-92); (5) reckless driving (N.J.S.A. 39:4-96); (6) leaving the scene of an accident (N.J.S.A. 39:4-129); and (7) failing to yield to an emergency vehicle (N.J.S.A. 39:4-92). DSOMF ¶ 19.

## B. Procedural History

Plaintiff filed the instant Complaint (the "FAC") in New Jersey state court and Defendants Jersey City, JCPD, Boamah, and Mitchell removed the matter to this Court.[4] D.E. 1. Prior to removal, Counts Two, Four, and Five of the FAC were dismissed with prejudice. Notice of Removal ¶ 4. While not a model of clarity,[5] Counts One and Three of the FAC appear to assert claims for excessive force, false arrest and imprisonment, and malicious prosecution pursuant to

---

[4] Plaintiff also filed suit against Jersey City Police Officer A. Scally, who has not yet been served, and Officer John and Jane Does #1-10, who have not yet been identified.

[5] On August 9, 2016, the Court granted Plaintiff's counsel's motion to withdraw as attorney, and Plaintiff has represented himself *pro se* since that time.

42 U.S.C. § 1983[6]; a claim for civil conspiracy to commit assault and battery under 42 U.S.C. §§ 1983 and 1985; a *Monell* claim against Jersey City for its failure to train, supervise, and control its police officers; and a number of state law claims as to all Defendants, including claims for negligence, assault, battery, and intentional infliction of emotional distress. On February 2, 2017, Defendants filed this motion for summary judgment.

## II.    SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence

---

[6] Count One states that Plaintiff is also asserting claims pursuant to the First, Sixth, Eighth, and Ninth Amendments. *See, e.g.*, FAC ¶ 22. The FAC, however, does not assert facts that appear to implicate any rights that are protected by these amendments and Defendants do not seek summary judgment for any such claims. As a result, the Court does not construe the FAC as actually asserting claims pursuant to the First, Sixth, Eighth, or Ninth Amendments. Plaintiff also appears to assert a claim pursuant to the Fourteenth Amendment. *Id.* Again, the FAC does not assert any facts that appear to implicate any Fourteenth Amendment rights. Moreover, when alleged wrongful conduct is governed by a specific amendment, as is the case for Plaintiff's excessive force, false arrest and imprisonment, and malicious prosecution claims, a Fourteenth Amendment Due Process analysis is inappropriate. *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000).

and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## III.    ANALYSIS

Defendants move for summary judgment on multiple grounds. In addition to arguing that Plaintiff fails to allege facts or produce evidence to create genuine issues of material fact as to his claims, Defendants argue that they are entitled to qualified immunity. The Court will address each argument in turn.

### A. Section 1983

Plaintiff asserts a number of claims pursuant to Section 1983. 42 U.S.C. § 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a claim under Section 1983, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys*., No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015). Here, Plaintiff alleges that Defendants violated his Fourth Amendment rights.

### i. *Monell* Claim

Plaintiff brings a *Monell* claim against Jersey City, alleging that he was injured as a result of a city-wide custom, policy and practice involving use of force and the failure to train officers on the appropriate use of force. FAC ¶¶ 30, 33. Defendants argue that the claim must be dismissed because Plaintiff fails to present any evidence that the incident was the result of a city custom, policy or practice. Defs' Br. at 23-24.

To establish a Section 1983 municipal liability claim, a plaintiff "must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91 (1978)). Where that policy concerns a failure to train employees, "liability under

[S]ection 1983 requires a showing that the failure amounted to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Id.* In addition, "'the deficiency in training must have actually caused' the constitutional violation." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).

In this instance, Plaintiff does not proffer any evidence about an alleged policy or custom that contributed to the alleged constitutional violations. Because of the absence of factual support, summary judgment is granted to Jersey City. *See Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 402 (D.N.J. 2016) (granting summary judgment to city on *Monell* claim because plaintiff failed to set forth any evidence from which a reasonable juror could conclude that defendant established a policy or custom that caused plaintiff's injury).

Defendants also argue that summary judgment should be granted as to the JCPD because a municipal police department is not an entity subject to suit. Defs' Br. at 24. The Court agrees that the JCPD is not a proper party to this matter. *Padilla v. Township of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (finding that in "Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity") (internal quotation omitted); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997) ("[W]e treat the municipality and its police department as a single entity for purposes of section 1983 liability."). Consequently, summary judgment is granted as to the JCPD.

### ii.  Lack of Probable Cause

Defendants argue that because they had probable cause to arrest Plaintiff, his claims for false arrest, false imprisonment and malicious prosecution fail as a matter of law. Defs' Br. at 3-

9. The Court agrees because the absence of probable cause is an essential element of a Section 1983 claim for false arrest, false imprisonment, and malicious prosecution.

False arrest and false imprisonment are very similar and are often considered together. For a Section 1983 claim for false arrest, a plaintiff must establish that (1) there was an arrest; and (2) the arrest was made without probable cause. *See James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). "The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)); *Nanton v. Mecka*, No. 11-6132, 2013 WL 1844756, at *6 (D.N.J. Apr. 30, 2013) ("The validity of an arrest does not depend on the ultimate finding of guilt or innocence following an arrest."). In addition, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *O'Connor v. City of Philadelphia*, 233 F. App'x 161, 164 (3d Cir. 2007) (citations omitted); *see Reedy v. Township of Cranberry*, No. 06-1080, 2007 WL 2318084, at *3 (W.D. Pa. Aug. 9, 2007) ("The basis for false arrest is the arrest itself, whereas the basis for false imprisonment is the detention that follows the false arrest."). For a Section 1983 malicious prosecution claim, a plaintiff must establish that (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) plaintiff suffered from a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

Thus, Defendants correctly assert that if there was probable cause to arrest Plaintiff, Plaintiff's claims fail as a matter of law. *See Herman v. City of Millville*, 66 F. App'x 363, 365 n.3 (3d Cir. 2003) (stating that probable cause is a "complete defense" to plaintiff's false arrest, false imprisonment, and malicious prosecution claims). Probable cause exists if, at the time a suspect is arrested, "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). The determination of whether there was probable cause requires a "common sense approach" based on "the totality of the circumstances."[7] *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).

In this instance, Plaintiff was arrested and charged with, among other things, eluding a law enforcement officer pursuant to N.J.S.A. 2C:29-2(b). DSOMF ¶ 19. N.J.S.A. 2C:29-2(b) provides that "[a]ny person, while operating a motor vehicle on any street or highway in this State . . . who knowingly flees or attempts to flee to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle . . . to a full stop commits a crime of the third degree." On the night of the incident, Defendants Mitchell and Boamah were flagged down by a motorist who claimed that she was struck by a black GMC with a Maine license plate. DSOMF ¶ 9. The GMC, which Plaintiff was driving, left the scene of the accident when Mitchell and Boamah arrived. Plaintiff pulled out of the accident scene quickly and failed to stop for the police even though Boamah activated the police cruiser's light and sirens. *Id.* ¶ 11; Scully Dep. T95:16-91:1. Moreover, Plaintiff drove erratically after he pulled away from the accident scene;

---

[7] Plaintiff here was not arrested pursuant to a warrant. If a warrant existed, it would apply a different test to determine whether probable cause was present. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (setting out two-part test to determine to validity of a warrant).

Plaintiff drove through a stop sign and went the wrong way on a one-way street. *See* Police Report at 8-9. Based on these undisputed facts, a reasonable person could conclude that Plaintiff committed the offense of eluding a law enforcement officer.

Accordingly, there is no genuine dispute of material fact that Defendants Mitchell and Boamah had probable cause to stop, detain, and charge Plaintiff. As a result, summary judgment is granted to Defendants for Plaintiff's false arrest, false imprisonment, and malicious prosecution claims.

### iii. Excessive Force

Defendants also seek summary judgment for Plaintiff's excessive force claim. Defendants do not appear to dispute that Plaintiff was injured because a police officer kicked or punched Plaintiff during the incident. Rather, Defendants maintain that the use of force was reasonable and that claim separately fails because Plaintiff cannot identify which officer actually injured him.

### 1. Qualified Immunity

Qualified immunity can protect a municipal officer from liability in a Section 1983 case. *Wright*, 409 F.3d at 599. "Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Paszkowski v. Roxbury Twp. Police Dep't*, No. 13-7088, 2014 WL 346548, at *2 (D.N.J. Jan. 30, 2014). A court must engage in a two-part inquiry to determine whether qualified immunity applies: (1) whether the allegations, taken in the light most favorable to the party asserting the injury, show that defendant's conduct violated a constitutional right; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts have discretion to consider either prong of the two-part analysis first. *Id*. at 236.

"The issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). In deciding qualified immunity questions at summary judgment, a court must view the facts in the light most favorable to the plaintiff. *Id.*; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Thus, summary judgment may be granted to officers if, when interpreting the facts in the light most favorable to the non-moving party, the court determines that the evidence does not support a violation of a clearly established constitutional right. *Mitchell v. Forsyth*, 472 U.S. 511, 546 (1985) (stating that "when a trial court renders a qualified immunity decision on a summary judgment motion, it must make a legal determination very similar to the legal determination it must make on a summary judgment motion on the merits"); *see also Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Scott*, 550 U.S. at 378.

Turning to the first prong of the qualified immunity analysis, a use of force is contrary to the Fourth Amendment "if it is excessive under objective standards of reasonableness."[8] *Green v. N.J. State Police*, 246 F. App'x 158, 161 (3d Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). To determine whether the use of force was reasonable, a court must ask "whether the officer's conduct was 'objectively reasonable' in light of the totality of the circumstances, without regard to the underlying intent or motivation." *Noble*, 112 F. Supp. 3d at 227 (quoting *Graham*, 490 U.S. at 397). This requires "an examination of the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). A court may also consider other

---

[8] The Fourth Amendment protects against unreasonable seizures, and the use of excessive force "is itself an unlawful 'seizure' under the Fourth Amendment." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 227 (D.N.J. 2015) (quoting *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006)).

facts, like "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the subject may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar*, 128 F.3d at 822. Finally, when deciding whether excessive force occurred, a court should not "apply the 20/20 vision of hindsight, but should instead consider the perspective of a reasonable officer on the scene." *Noble*, 112 F. Supp. 3d at 227 (quoting *Graham*, 490 U.S. at 397).

Defendants appear to argue that because there was probable cause for Plaintiff's arrest, their actions were objectively reasonable. Defs' Br. at 11. This argument, however, has been expressly rejected -- "probable cause to arrest is not a cognizable defense to an excessive force claim." *Niblack v. Murray*, No. 12-6910, 2016 WL 4086775, at *4 (D.N.J. July 29, 2016). Moreover, even though the parties have different accounts of what occurred when Plaintiff was arrested, the Court must view the facts in the light most favorable to Plaintiff at the summary judgment stage. *Giles*, 571 F.3d at 326. Here, Plaintiff's version of events creates genuine issues of material fact that precludes summary judgment on the excessive force claim.

There is no dispute that Plaintiff fled the accident scene, failed to stop for the police despite the cruiser's lights and sirens being activated, drove erratically, and rear-ended the police cruiser. DSOMF ¶¶ 11-12. The parties differ as to what occurred next. Defendants claim that Plaintiff made a furtive movement, after he was told to show his hands, which led to him being forcibly removed from his vehicle. Plaintiff, on the other hand, asserts that he was pulled from the GMC Suburban without verbal warning. After Plaintiff was removed from the vehicle, Plaintiff's version of events (if believed) could support a finding of excessive force. Plaintiff was unarmed and no party alleges that he was resisting arrest. Further, once Plaintiff was lying face down on the ground, he posed little further threat to Boamah or Mitchell to justify the continuing physical

assault.  Finally, Plaintiff's passenger exited the car and was placed in handcuffs without incident so the Officers were not faced with a situation where multiple people created a risk to their safety. Mitchell Cert. ¶ 10; Scully Dep. at T101:13-18.  Accordingly, a jury could conclude that it was not reasonable for Boamah to punch Plaintiff ten to twelve times after he was already lying face down on the ground; the same conclusion applies to Mitchell kicking Plaintiff repeatedly in the side. *See, e.g.*, *Green*, 246 F. App'x at 162 (stating that a reasonable jury could find a constitutional violation in part because after Plaintiff was pulled from his car he was thrown to the ground, kneed and kicked several times); *Niblack v. Murray*, No. 12-6910, 2016 WL 4086775, at *1, 3 (D.N.J. July 29, 2016) (denying defendants' motion for summary judgment where Plaintiff alleged that officers knocked him to the ground then repeatedly punched and kicked Plaintiff).  Further, "[t]he gratuitous use of force against an arrestee who has already been restrained violates the Fourth Amendment." *Noble*, 112 F. Supp. 3d at 228.  There is, therefore, a genuine issue of material fact as to whether Boamah and Mitchell violated Plaintiff's Fourth Amendment rights through the use of excessive force.

Because a reasonable jury could find a constitutional violation based on Plaintiff's version of events, the Court must also consider whether Plaintiff's rights were "clearly established" at the time.  *Pearson*, 555 U.S. at 232.  The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202.  "To make that determination, [a court should] engage in another reasonableness inquiry: 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Santini v. Fuentes*, 795 F.3d 410, 417-18 (3d Cir. 2015) (quoting *Saucier*, 533 U.S. at 202).  This analysis is "undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201.  In sum, "officers who make reasonable mistakes as to what the law requires are

entitled to qualified immunity, which 'operates to protect officers from the sometimes hazy border between excessive force and acceptable force.'" *Green*, 246 F. App'x at 162 (quoting *Saucier*, 533 U.S. at 206) (internal punctuation omitted).

Defendants do not address the second prong of the qualified immunity analysis. However, when the incident occurred, "the law was clear that beating an unarmed suspect who was not resisting arrest violates the Fourth Amendment's prohibition against excessive force." *Noble*, 112 F. Supp. 3d at 229 (collecting cases demonstrating that the right was clearly established); *see also Green*, 246 F. App'x at 163 (determining that right was clearly established where plaintiff alleged that Defendants used excessive force after plaintiff was already handcuffed and placed in the back of a police cruiser). In this instance, it should have been clear to Boamah and Mitchell that once Plaintiff no longer posed a risk to police officers, the continued use of force would be excessive and therefore unconstitutional. Accordingly, Boamah and Mitchell are not entitled to qualified immunity for the excessive force claims and summary judgment is denied on these grounds.

### 2. Identity of Defendants

Defendants also argue that Plaintiff's excessive force claims must be dismissed because he cannot identify the officers who allegedly used excessive force against him. Defs' Br. at 12-17. "[I]n the face of a motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018). As discussed, viewing the evidence in a light most favorable to Plaintiff, Plaintiff does just that. Plaintiff explained that the driver of the police cruiser assaulted him. *See, e.g.*, Scully Dep. at T97:3-24. Although Boamah denies assaulting Plaintiff, he admits to being the driver of the police cruiser. DSOMF ¶ 10. In addition, while Plaintiff could not see Mitchell during Mitchell's alleged

use of physical force, Plaintiff did view Mitchell as he was placing handcuffs on Plaintiff. *Id.* at T118:1-119:7. Mitchell also admits to being at the scene of the incident. DSOMF ¶ 13. Critically, according to Plaintiff, no other JCPD officers were present when the excessive force occurred. Plf's Feb. 9, 2018 Letter; Plf's Apr. 24, 2018 Letter. Thus, if a jury accepts Plaintiff's version of events, it could reasonably conclude that Boamah and Mitchell were the assailants.

Defendants argue that Plaintiff fails to properly identify Boamah because Plaintiff testified at his deposition that Boamah was Caucasian, when he is actually a dark-skinned African-American man. Defs' Br. at 13. Plaintiff, however, states that his statement about Boamah's race at the deposition was a mistake. Plaintiff explains that he made this mistake because he never really got a good look at Boamah because the events progressed quickly and it was dark out. Plf's Feb. 9, 2018 Letter. Moreover, Officer Boamah does not deny that he was at the scene of the incident. He admits to driving the police cruiser, breaking Plaintiff's car window, and pulling Plaintiff out of the car. DSOMF ¶¶ 10, 13, 15-16. Rather than being an issue of gross misidentification, as Defendants' contend, whether Boamah used excessive force on Plaintiff is a quintessential factual dispute that is not appropriate to resolve at summary judgment. That being said, Defendants will clearly be able to use Plaintiff's deposition testimony as to Boamah at trial.

Similarly, Defendants also maintain that Plaintiff is only guessing that Mitchell assaulted Plaintiff. Defs' Br. at 15. Although Plaintiff could not see Mitchell kick or punch Plaintiff in his rib cage, once the beating stopped Plaintiff looked up at saw Mitchell placing handcuffs on Plaintiff. Scully Dep. at T118:1-119:7. According to Plaintiff, however, no other JCPD officers had arrived when he was kicked or punched. Plf's Feb. 9, 2018 Letter; Plf's Apr. 24, 2018 Letter. Consequently, if the jury finds Plaintiff credible and accepts his version of events, Mitchell is the only officer that could have assaulted Plaintiff as alleged. Therefore, whether Mitchell violated

Plaintiff's constitutional rights by kicking or hitting Plaintiff is also a material factual dispute.[9]

Therefore, Defendants' motion for summary judgment as to Plaintiff's excessive force claim is

denied.

### iv. Failure to Intervene

Plaintiff also asserts failure to intervene claims against Defendants.  To establish a Fourth

Amendment violation for an officer's failure to intervene, a plaintiff must demonstrate that the

officer "(1) observed or had knowledge that a constitutional violation was taking place, yet failed

to intervene; and (2) had a reasonable and realistic opportunity to intervene."  *Monticciolo v.*

*Robertson*, No. 15-8134, 2017 WL 4536119, at *18 (D.N.J. Oct. 11, 2017).  Defendants argue that

summary judgment should be granted as to Boamah and Mitchell for the failure to intervene claim

because neither Defendant saw a constitutional violation occur.  Defs' Br. at 17.

Defendants again improperly rely solely on their version of events to argue that summary

judgment should be granted.  But in a motion for summary judgment, "[i]nferences should be

drawn in the light most favorable to the non-moving party, and where the non-moving party's

evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW,*

*Inc. v. BMW of N.A., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).  This is clearly not a case where

Plaintiff's version of events "is so utterly discredited by the record that no reasonable jury could

---

[9] When a plaintiff pleads both excessive force and failure to intervene claims, as is the case here, courts have determined that the plaintiff need not establish each officer's specific role in the alleged incident.  *See, e.g.*, *Corley v. Shahid*, 89 F. Supp. 3d 518, 524 (E.D.N.Y. 2015) ("I do not hold that plaintiff had an obligation to identify which police officer kicked him and which police officers failed to intervene.  It would be too much to require a citizen subjected to a police attack to separately identify the role of each defendant."); *Karkoszka v. Dart*, No. 13-1635, 2016 WL 164331, at *3 (N.D. Ill. Jan. 14, 2016) ("A plaintiff's inability to identify which of the named defendants attacked him does not preclude liability on an excessive force claim as long as the plaintiff 'can show at trial that an officer attacked him while other officers ignored a realistic opportunity to intervene.'" (quoting *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000))).

have believed him." *Scott*, 550 U.S. at 380. Instead, the parties tell two different stories as to what occurred and the limited documentary evidence fails to discredit either party's version for summary judgment purposes. As a result, a reasonable jury could credit Plaintiff's testimony and find not only that Boamah and Mitchell saw the excessive force occur, but also that one or both of them failed to intervene when the other was assaulting Plaintiff. As a result, Defendants' motion for summary judgment is denied as to Plaintiff's failure to intervene claim.[10]

### v. Conspiracy Claims

Plaintiff also appears to assert conspiracy claims under Sections 1983 and 1985(3),[11] specifically, a conspiracy to commit an assault and battery. FAC ¶ 47. Defendants argue that summary judgment should be granted for them because there is no evidence in the record to support these claims. Defs' Br. at 17-21. The Court agrees.

To prove a civil conspiracy under Section 1983, a plaintiff must show that state actors "'reached an understanding' to deprive him of his constitutional rights." *Jutrowski*, 904 F.3d at 293-94 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). The "linchpin for [Section 1983] conspiracy is agreement, concerted action, without more, cannot suffice to state a conspiracy claim." *Watson v. Sec'y Pa. Dep't of Corrs.*, 436 F. App'x 131, 137 (3d Cir. 2011)

---

[10] Although not addressed by Defendants, "it would be clear to a reasonable officer that failing to intervene when a fellow officer employs excessive force against a suspect would be an unlawful violation of the suspect's constitutional rights." *Abrahante v. Johnson*, No. 07-5701, 2009 WL 2152249, at *12 (D.N.J. July 14, 2009) (collecting cases that recognize an officer's duty to intervene when a fellow officer employs excessive force). As a result, Defendants are not entitled to qualified immunity for the failure to intervene claim.

[11] In the FAC, Plaintiff pleads a conspiracy claim pursuant to 42 U.S.C. § 1985(2) *et seq*. FAC ¶ 47. Section 1985(2) prohibits a conspiracy to intimidate or threaten a witness from giving full, free, and truthful testimony in a pending matter or to injure such a witness on account of his having given such testimony. 42 U.S.C. § 1985(2). Given that this subsection is clearly inapplicable to the facts here, the Court construes Plaintiff's Section 1985 conspiracy claim as one pursuant to subsection (3).

(internal quotations and punctuation omitted). Moreover, a plaintiff must provide some factual basis, through direct or circumstantial evidence, to support the existence of the elements of a conspiracy. *Jutrowski*, 904 F.3d at 295. Section 1985(3) conspiracy claims are limited to conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). A plaintiff must prove the following to sustain a Section 1985 claim:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Id.* (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)).

Here, the record is devoid of any facts that demonstrate the existence of an agreement or that Plaintiff is a member of a protected class; in fact, Plaintiff did not even plead that he was a member of a protected class.[12] As a result, there is no genuine issue of material fact and Defendants are granted summary judgment as to Plaintiff's Sections 1983 and 1985 conspiracy claims.

---

[12] The FAC also asserts a claim for conspiracy pursuant to 42 U.S.C. § 1981. *See, e.g.*, FAC ¶ 31. Violations of Section 1981 must be brought pursuant to Section 1983 because "no implied private right of action exists against state actors under 42 U.S.C. § 1981." *McGovern v. City of Philadelphia*, 554 F.3d 114, 122 (3d Cir. 2009). Accordingly, claims relating to Plaintiff's Section 1981 rights are subsumed by Plaintiff's Section 1983 conspiracy claim. Because Plaintiff summary judgment is granted as to Plaintiff's Section 1983 conspiracy claim, his Section 1981 conspiracy claim also fails.

### B. Common Law Tort Claims

Additionally, Defendants argue that they are entitled to summary judgment for the state law tort claims because Plaintiff failed to serve a timely notice of claim on Defendants. Defs' Br. at 24-26. The Court agrees.

A party that asserts a tort claim seeking damages from a public entity or public employee must comply with the New Jersey Tort Claims Act ("TCA"), which "establishes the procedures by which [such] claims may be brought." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 N.J. 130, 146 (2013) (quoting *Beauchamp v. Amedio*, 164 N.J. 111, 116 (2000)). One requirement is "that a timely pre-suit notification about the existence of the claim and its particulars be provided to the defendants." *Id.*

N.J.S.A. 59:8-8 requires that within ninety days of a claim's accrual, an individual must file a "notice of claim" with the entity involved in the alleged wrongful act or the New Jersey Attorney General. An individual "shall be forever barred from recovering against a public entity or public employee if . . . [t]he claimant failed to file with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.A. 59:8-9." N.J.S.A. 59:8-8. N.J.S.A. 59:8-9 provides that within one year of a claim's accrual, a judge may allow a claimant to file a late notice of claim if doing so would not cause substantial prejudice to the defendant and if the untimeliness was due to "extraordinary circumstances." These timing requirements are strictly construed, and a plaintiff who fails to comply is barred from recovering on his claims. *Niblack v. SCO Malbreen*, No. 15-5298, 2016 WL 1628881, at *3 (D.N.J. Apr. 25, 2016); *see also Miles v. City of Jersey City*, No. 14-5492, 2018 WL 4005742, at *9 (D.N.J. Aug. 22, 2018) (granting motion for summary judgment as to state common law claims because Plaintiff failed to provide proof that he filed a timely notice of claim).

The incident at issue occurred on May 18, 2013. Plaintiff, however, filed his Notice of Claim with Jersey City on May 21, 2014 -- more than one year after the incident occurred. Robinson Cert. Ex. F, Certification of Kathleen Kolar ¶ 5. It does not appear that Plaintiff obtained leave of court before filing his late notice of claim. Moreover, the Court could not consider a request for leave to a file a late notice of claim now because courts are "without jurisdiction" to permit filing of a late notice of claim more than one year after the accrual of the claimant's cause of action. *Niblack*, 2016 WL 1628881, at *4 (quoting *Williams v. Maccarelli*, 266 N.J. Super. 676, 679 (App. Div. 1993)); *Barbieri v. Mayer*, No. A-0362-14T1, 2015 WL 9263849, at *3 (App. Div. Dec. 21, 2015) ("Time after time this court has made abundantly clear that, after the ninety-day deadline has passed and a plaintiff has not utilized the procedure under N.J.S.A. 59:8–9 to obtain an extension of that period up to one year, courts lack jurisdiction to entertain tort claims if the required notices were not timely filed."). Because Plaintiff failed to obtain the requisite leave, his late notice filing is null. *Barbieri*, 2015 WL 9263849, at *3 ("Indeed, the filing of a late notice of claim with the public entity, in the absence of prior court approval pursuant to N.J.S.A. 59:8-9, has been deemed a nullity.") (citing *Rogers v. Cape May County*, 208 N.J. 414, 427 (2011)). Accordingly, Defendants' motion for summary judgment is granted as each of Plaintiff's common law tort claims.

### C. Lost Wage Claim

In the FAC, Plaintiff alleges that he lost income as a result of Defendants' improper conduct. FAC ¶ 45. Defendants maintain that as a matter of law, summary judgment should be granted to them for Plaintiff's claim for lost wages because Plaintiff "is the sole cause of his alleged lost earning." Defs' Br. at 26.

"An injured party has the right to be compensated for diminished earning capacity." *Caldwell v. Haynes*, 136 N.J. 422, 433 (1994). Moreover, "[t]he measure of damages for tort recovery encompassing diminished earning capacity can be based on the wages lost as a result of the defendant's wrongdoing." *Id.* In this instance, Plaintiff was unemployed when the incident occurred. DSOMF ¶ 23. Therefore, Plaintiff cannot establish that he lost wages *as a result of* Defendants' conduct. Because there is no genuine dispute of material fact, summary judgment is granted for Defendants on these grounds. To be clear, because summary judgment is granted to Defendants for every claim except Plaintiff's Section 1983 excessive force claim, Plaintiff is now foreclosed from recovering his lost wages as damages for his excessive force claim.

## IV.     CONCLUSION

For the reasons set forth above, Defendants motion (D.E. 34) is **GRANTED in part and DENIED in part**. An appropriate Order accompanies this Opinion.

Dated: December 27, 2018

                                                   __ s/ John Michael Vazquez_____
                                                   John Michael Vazquez, U.S.D.J.